UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Case No. |
| v. | ) | 12-cr-65-JMH |
| | ) | |
| HAROLD SMITH, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court with respect to restitution as to Defendant Harold Smith. The Court has had the benefit of the United States' Memorandum on Restitution [DE 691] and Defendant Smith's Memorandum Regarding Restitution [DE 722], as well as the presentation of evidence by the United States and argument by counsel for the United States and the attorney for Defendant Harold Smith during the hearing conducted on April 13, 2015 [DE 732, 733].[1] At the conclusion of the hearing, the Court announced its decision with respect to restitution due from Defendant Smith in this matter. The Court memorializes some aspects of that decision in this Memorandum Opinion, as set forth below.

---

[1] At the same hearing, Defendant Dwayne Hardy announced, by and through counsel, that he would stipulate to the restitution amount submitted by the Government, and the Court accepted that stipulation.

The Mandatory Victims Restitution Act (MVRA) requires district courts to award restitution to identifiable victims of fraud. 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(A)(ii). A "victim," for purposes of the MRVA, is defined as any "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." *Id*. at § 3663A(a)(2). For purposes of restitution liability, "co-conspirators are held jointly and severally liable for all foreseeable losses within the scope of their conspiracy regardless of whether a specific loss is attributable to a particular conspirator." *United States v. Moeser*, 758 F.3d 793, 797 (7th Cir. 2014) (*citing United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013); *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir.2010); *United States v. Martin*, 195 F.3d 961, 968–69 (7th Cir.1999)). Accordingly, the United States need not "prove 'a direct causal relationship between the defendant's personal conduct and a victim's loss,' because 'the MVRA imposes joint liability on all defendants for loss caused by others participating in the scheme.'" *Id*. (citing *Dokich*, 614 F.3d at 318 (emphasis added)). Still, in a multi-defendant case where joint and several liability is applicable, the government is

required to establish, by a preponderance of the evidence, a causal connection between the victims loss and the fraudulent scheme. *See United States v. Martin*, 195 F.3d 961, 969 (7th Cir. 1999).

In its decision on the issue of the amount of loss attributable to each defendant in this matter for the purposes of properly calculating the sentencing guidelines [DE 558], this Court reached a conclusion with respect to the amount of time, demonstrated by a preponderance of the evidence, that each defendant was part of the conspiracy charged in this matter. For the purposes of restitution, the United States has asked that the Court impose joint and several liability on each of the defendants in the amount of actual loss suffered by individuals who were victimized by the scheme during the defendants' individual periods of involvement in the scheme.  In light of the case law and the Court's earlier decisions, the Court concludes that this is an appropriate attribution of loss for purposes of restitution in light of the conspiracy conducted by the defendants and others.  Thus, Defendants Hardy and Smith will be held jointly and severally liable for all foreseeable losses within the scope of the conspiracy during the course of their involvement regardless of whether a specific loss is attributable to the particular defendant being held responsible

for restitution – so long as the loss was caused by others participating in the conspiracy.

In reaching this conclusion, the Court rejects Harold Smith's argument that the United States' has presented insufficient evidence and failed to carry its burden to support the claim for restitution by a preponderance of the evidence. He complains primarily of the lack of authenticated documents to support any one victim's claim of loss and the fact that Agent Lowe has only been able to connect a handful of losses to the actions of individual co-defendants in this matter. He argued that the generalized relationship of the losses to fraud conducted via the Internet was insufficient to connect the losses claimed to the conspiracy at bar.

During the restitution hearing, the United States introduced a spreadsheet which United States Secret Service Special Agent Allen Lowe testified to be a list that he compiled from information that he had obtained from the course of the investigation of this matter and which identified each individual victim of the conspiracy known to him and the amount of loss suffered by each those victims. The United States also introduced individual spreadsheets for Defendants Hardy and Smith, which Agent Lowe testified to be lists of the same information as contained in the larger spreadsheet but limited

to those victims who suffered loss during the period of each defendant's involvement as previously determined by the Court.[2]

The Court also heard testimony from Agent Lowe during the restitution hearing, which piggybacked onto his testimony during the hearing on the amount of loss and the sentencing hearings in this matter, in which he described how a black notebook or ledger was seized from the car in which Defendants Nicholas Corey Garner and Eli Holley were arrested in September 2011. That ledger was entered into evidence in this matter during the loss hearing.  Lowe explained and the Court has observed itself that the ledger contains what appear to be lists of transactions.  Using that information, investigators sent subpoenas to Western Union and Money Gram for information connected to the notations found in that ledger which, as it turns out, corresponded to actual transactions conducted via Western Union and MoneyGram and received by members of the Garner group in the course of their conspiracy.  Lowe has also testified before this Court, during other proceedings, that he contacted as many of the individuals who sent money in those transactions as he could (over 250 individuals) and that each told him that he or she had been defrauded of funds sent for the purchase of a vehicle advertised at one of many online sites

---

[2] The United States did not introduce a spreadsheet for Nathaniel Garner because no victims claimed losses during the period of his involvement.

which was never delivered to them. Agent Lowe has also testified that some of the information that he gathered about these victims and the amount of loss incurred as a result of those transactions was obtained from records provided by the victims themselves – victim impact statements, declarations of victim loss, other types of statements, receipts, and the like. Those victims and losses are reflected in those entries in the spreadsheet designated "WU" or "MG".

Other transactions attributable to the conspiracy were discovered through other means during the investigation, and Lowe has indicated them as "BVL," meaning that the transaction in question was a bank wire transfer from an individual victim for the purchase of vehicle into an account established by someone within the conspiracy group, or "LMPD," meaning that the information concerning these victims was provided to him by investigators from the Louisville Metro Police Department who were investigating internet fraud activities in that geographic area. Again, Lowe indicated during his testimony and notations on his spreadsheet that in some instances he also relied on additional supporting documents to establish the identities of these victims and their amounts of loss – declarations of victim loss, victim impact statements, or other materials, like

receipts – suffered as a result of the activities of the conspiracy.[3]

At the restitution hearing and in his brief, Defendant Smith objected to the sufficiency of the evidence presented by the United States on two grounds, arguing that the United States had failed to meet its burden of demonstrating that restitution was due by a preponderance of the evidence. In the first instance, he objected on the grounds that Agent Lowe's testimony failed to establish evidence connecting the losses of the individuals identified by Agent Lowe – who the United States urges are victims – to the acts undertaken by the conspiracy. He objects, as well, to the presentation of evidence by Agent Lowe as insufficient, without more support from the discovery materials provided to them, to support the position of the United States on restitution. Notably, he argued that the evidence presented was weak as the United States presented no authenticated documents to support any one victim's loss and identified only a handful of losses which, if the Court believes that they occurred, could be tied back to the individual defendants. He objected as well to Agent Lowe's testimony which suggested that certain losses were connected to the conspiracy

---

[3] Agent Lowe testified that in those instances where money has been returned to the victims to cover their loss from a source, he has entered a "zero" in the chart to reflect the absence of restitution available to that victim. He also omitted any claims for mental anguish or pain and suffering communicated by the victims.

because of a generalized relationship to fraud conducted via the internet.

As a practical matter, the Court considers these objections in light of three natural groupings of evidence identified by the United States:  those transactions which were recorded in the ledger discovered in the car at the time of Nicholas Corey Garner and Eli Holley's arrest (WU/MG); those related to victims who sent money via the wires to bank accounts set up by the co-conspirators (BLV); and that related to those transactions investigated or discovered through the investigation conducted by the Louisville Metro Police Department (LMPD).

With respect to the first objection, the Court has already accepted that the transactions recorded in the ledger (WU/MG) or received by bank wire (BLV) are evidence of intended or actual loss attributable to the conspiracy for the purposes of calculating the sentencing guidelines.  Now, the Court sees that collection of ledger notations, from which investigators were able to craft subpoenas and recover information from Western Union and Moneygram as to the true identity of the payors listed in that ledger and their amount of loss, as evidence of actual loss which impacted real, identifiable people, directly and proximately harmed by the fraudulent activities conducted by the conspirators.  The same is true for the evidence concerning the bank wires and information gained related to those individuals

who wired money into those accounts but never received the item they sought to purchase. The Court considers this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

As for those transactions investigated by the LMPD, Agent Lowe testified that his contact in that agency, Detective Maroni, advised him that he had learned through the course of his investigation that the named individuals were each the victim of an Internet scam which was conducted in the same way as that conducted by the co-conspirators in the instant matter. The individuals sent money in amounts similar to the those transactions recorded in the ledger, ranging from around $2,500 to around $3,500, for the purchase of a vehicle advertised on a sales websites and never received a vehicle in return. As the Court has heard before, some of those individuals received emails indicating that the vehicle "for sale" had belonged to the "sellers'" son who had died following a car accident and that the "seller" wished to get rid of the vehicle because of the sad memories associated with it. The Court recalls evidence from the loss hearing which revealed that files or emails containing that narrative were found on computers in the

possession of and used by some of the co-conspirators in this matter. Further, as Agent Lowe explained, the funds from each of these individuals were sent to the Louisville area in the same time frame as the co-conspirators in this matter were operating in the area, receiving funds from other locations. Finally, Agent Lowe testified that at least two of the transactions investigated by the LMPD were also listed in the ledger and were verified by materials received in response to subpoenas issued to WU and MG as part of his own investigation.

Agent Lowe has also testified that Detective Maroni was, at that time, the only investigator at LMPD assigned to track and investigate internet-based crimes and that Detective Maroni had informed him that the Garner group was the only group of which he was aware which was conducting fraudulent activities of this sort in the area. The Court considers all of this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

Finally, the Court reached the conclusion that Agent Lowe's testimony is sufficient to establish the victims' identities and losses by a preponderance of the evidence over Smith's objection regarding his authentication of those materials upon which Lowe

relied in crafting his summary chart and his testimony. He also intimates that he objects to Agent Lowe's testimony, itself, because it is hearsay. The Federal Rules of Evidence – including those which limit the introduction of unauthenticated documents or hearsay evidence – do not, however, apply at sentencing, and restitution is part of sentencing. Fed. R. Civ. P. 1101(d)(3), 18 U.S.C. § 3663A(a)(1) ("when sentencing a defendant . . . the court shall order . . . that the defendant make restitution to the victim of the offense"). Additionally, the United States made it clear during the hearing that all of the underlying physical evidence, summarized in Lowe's charts, was available to Defendant prior to the hearing for examination. Even if the charts summarized aspects of the evidence obtained by Lowe through interviews and unavailable in the materials produced, he was available for cross-examination at the hearing. Finally, the Court notes that, even if the Rules of Evidence applied, Rule 1006 would permit the United States to use a summary or chart to prove the content of voluminous records so long as the originals or duplicates were available for examination by defendants. Defendant was free to undermine the reliability of the evidence received through Agent Lowe's testimony by cross-examination or by presenting additional evidence, but the Court was not required at this stage in the proceeding to conclude that it was unreliable merely because

portions of Agent Lowe's testimony were hearsay or because the documents were not authenticated.

Accordingly, for all of the reasons stated during the hearing and in this Memorandum Opinion and Order, the Court concludes that the United States has borne the burden of demonstrating by a preponderance of the evidence that restitution is owed to those individuals identified by Agent Lowe and listed in the spreadsheets. From the evidence presented, the Court concludes that each of those individuals is a person directly and proximately harmed by a co-conspirator's conduct in the course of the scheme, conspiracy, or pattern charged in this matter and that each of the defendants should be held jointly and severally liable for all foreseeable losses within the scope of their involvement in the conspiracy regardless of whether each individual's specific loss is attributable to the particular conspirator being held liable. *See* 18 U.S.C. § 3663A(a)(2).

Restitution will be ordered, jointly and severally, in the amount of $1,727,250.06 for Defendant Harold Smith.

This the 22nd day of April, 2015.

**IT IS SO ORDERED.**



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge